**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3169

_____

Dorothy Curtis,                              *
                                             *
    Plaintiff/Appellee,              *
                                             *  Appeal   from   the   United   States
District
        v.                       *  Court for the Eastern District of
                                             *  Missouri.
Electronics & Space Corporation,             *
                                             *
    Defendant/Appellant.             *

_____

Submitted:  April 18, 1997

Filed:    May 28, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, FAGG and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

    A jury found that the Electronics & Space Corporation (ESC) willfully discriminated against Dorothy Curtis on the basis of her age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (1997), and awarded her back pay and liquidated damages. The district court[1] then added front pay and attorney fees. ESC appeals from the judgments. We affirm.

_____

[1]The Honorable Terry I. Adelman, United States Magistrate Judge for the Eastern District of Missouri, sitting by consent of the parties.

Dorothy Curtis was fired from her job in the administrative services department of ESC in 1991, when she was 63 years old. ESC was reducing its workforce, and the manager of the department, Cathy Crosby, was asked by the head of the department, David Taylor, to recommend employees for termination. Crosby recommended Curtis who was was then laid off. Curtis testified at trial that at the meeting in which she was told she was losing her job, "Ms. Crosby told me that there was a decline in the work in my area and I was going to be 64, [on] my birthday July the 5th, and it was decided that I was going to be laid off because of my age."

The jury found that ESC had willfully violated the ADEA and awarded Curtis $33,380 for back pay, to which the district court added $33,380 in liquidated damages. An evidentiary hearing on Curtis' request for equitable relief was held after the jury trial and resulted in her receiving $40,303 in front pay. She also was awarded attorney fees in an amount lower than she sought.

ESC appeals from the judgments and the denial of its motion for judgment as a matter of law or, in the alternative, a new trial. ESC presents three major arguments: there was insufficient evidence to support the jury finding that it violated the ADEA, its conduct was not willful, and the district court erred by awarding Curtis front pay.

I.

ESC contends that there was insufficient evidence to support a jury verdict in Curtis' favor and that the court erred by not granting its motion for judgment as a matter of law or a new trial. Curtis' testimony that Crosby told her she was being terminated on account of her age should not have been credited. ESC presented evidence that Curtis had told another employee that she did not know why she had been fired and that her contemporaneous notes of the meeting with Crosby did not mention age discrimination. There was also testimony from another person who attended the meeting at which Curtis was fired who said that age was not discussed.

-2-

The standard of review of a denial of a motion for judgment as a matter of law is de novo. Wiehoff v. GTE Directories Corp., 61 F.3d 588, 591 (8th Cir. 1995). The moving party must show that no reasonable juror could have found for the opposing party. Newhouse v. McCormick & Co., 110 F.3d 635, 639 (8th Cir. 1997). All evidence is viewed in the light most favorable to the verdict, and the winning side should receive the benefit of all reasonable inferences. Ryther v. KARE 11, 108 F.3d 832, 844 (8th Cir. 1997) (en banc), petition for cert. filed, 65 U.S.L.W. 3694 (U.S. April 4, 1997) (No. 96-1571). The court should also assume that all conflicts in the evidence were resolved in favor of the verdict and that the prevailing party proved all the facts its evidence tended to prove. Id. "Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear." Id. at 845 (quoting Lavender v. Kurn, 327 U.S. 645, 653 (1946)).

The district court did not err in denying the motion for judgment as a matter of law. There was sufficient evidence to support a verdict in favor of Curtis. Although there was evidence that challenged her credibility, the court's role is not to reassess the credibility of the witnesses. E.g., Fox v. T-H Continental Ltd. Partnership, 78 F.3d 409, 413 (8th Cir. 1996). The jury is free to credit or discredit testimony as it believes appropriate, and it was up to it to decide whether Curtis was telling the truth about Crosby's comments at the termination meeting. Crosby was involved in the decision-making process that led to the termination, and the statement attributed to her was direct evidence of discriminatory animus in violation of the ADEA. See Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316, 1323 (8th Cir. 1994). There was evidence attacking Crosby's credibility as well, countering the reasons given by ESC for the termination, and suggesting there was preferential treatment of younger employees.

ESC also contends the district court erred by denying its motion for a new trial since Curtis' testimony was unreliable and should not have been credited and the verdict was a miscarriage of justice. Leichihman v. Pickwick Int'l, 814 F.2d 1263,

1267 (8th Cir. 1987).  The denial of a new trial motion based on the argument that the jury verdict was against the weight of evidence "is virtually unassailable on appeal," however.  Grogg v. Missouri Pac. R.R. Co., 841 F.2d 210, 214 (8th Cir. 1988).  The role of the trial court in deciding such a motion does not include making its own assessment of witness credibility, see McGee v. South Pemiscot Sch. Dist. R-V, 712 F.2d 339, 344 (8th Cir. 1983), and ESC has not shown the verdict was against the weight of the evidence or that there was a miscarriage of justice.  The district court did not abuse its discretion in denying the motion for a new trial.

II.

ESC argues there was insufficient evidence to support the jury's conclusion that  it willfully discriminated against Curtis on the basis of her age.  Liquidated damages should therefore not have been awarded.  ESC claims that Curtis offered no proof of willfulness and that it had procedures in place to prevent willful violations of the ADEA.

"A violation of the ADEA is willful if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"  Nelson v. Boatmen's Bancshares, Inc., 26 F.3d 796, 803 (8th Cir. 1994)(quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 617 (1993)).  We review the jury's determination that ESC willfully violated the ADEA under the same standard applied to its conclusion that the ADEA was violated.  Nelson, 26 F.3d at 803.

Examination of the evidence in the light most favorable to the verdict shows  there was evidence to support an inference Crosby knew that her conduct was unlawful.  She acknowledged that she had attended company seminars at which she was told age discrimination was against company policy, and there were ADEA posters at ESC that she would have seen.  While the existence of an ADEA poster in the workplace and evidence that the decision-maker has been briefed on age discrimination

-4-

may not individually support a finding of willfulness, see Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128 (1985); Glover v. McDonnell Douglas Corp., 12 F.3d 845, 849 (8th Cir. 1993), such evidence can be relevant on the issue. Here there was evidence that ESC intentionally terminated Curtis on the basis of age, and the jury could find its violation was willful since there was evidence that Curtis knew age discrimination was unlawful. See Hazen Paper, 507 U.S. at 617 ("It would be a wholly circular and self-defeating interpretation of the ADEA to hold that, in cases where an employer more likely knows its conduct to be illegal, knowledge alone does not suffice for liquidated damages.") ESC has not argued that it mistakenly believed that it had made a legitimate age-based decision under the ADEA. See id. at 616 (no liquidated damages if employer in good faith and "nonrecklessly" believes its action was permitted under the ADEA).

ESC's reference to its policy designed to prevent age discrimination does not insulate it from liability under the ADEA. The policy may have been designed to ensure that its employees were not reckless in disregarding the ADEA, and it may have often served that purpose, but if Curtis' testimony is credited, the policy did not prevent Crosby from discriminating on the basis of age. A company policy cannot shield an employer from liability if one of its decision-makers willfully and unlawfully discriminates against an employee on the basis of her age. See Ryther v. KARE 11,864 F. Supp. 1510, 1520 (D. Minn. 1994), aff'd, 108 F.3d 832 (8th Cir. 1997) (en banc) (finding willful violation even though company had policy against age discrimination).

III.

ESC challenges the district court's award of three years of front pay to Curtis. ESC disputes Curtis' testimony that she could have worked to age 70, and front pay should not have been awarded it says because her back pay award was approximately

-5-

the value of three years pay and fully compensated her since she would have eventually lost her job in 1994 when further cuts were made.[2]

Curtis testified at the post trial hearing that she had intended to work for ESC until she was 70. She introduced expert testimony that calculated her future damages to be $42,768 (or about $14,000 per year) for lost wages and benefits. ESC argued in response that there was insufficient evidence she would have worked until age 70 or remained so long at ESC. It also offered evidence that Curtis' position was eliminated in May 1994 when the work was taken over by a part-time employee, that thereafter there were no employees at her salary grade in her former department, and that the department lost another job in February 1995. ESC also contended that her skills were too limited to enable her to transfer to a new assignment.

The ADEA provides the district court with discretion to order equitable relief to compensate an injured person for what was lost because of age discrimination. Williams v. Valentec Kisco, Inc., 964 F.2d 723, 730 (8th Cir. 1991). The plaintiff carries the initial burden to provide proof of a basis for a front pay award, and the burden then shifts to the defendant to prove it is inappropriate. Barbour v. Merrill, 48 F.3d 1270, 1280 (D.C. Cir. 1995), cert. granted, 116 S. Ct. 805, and cert. dismissed, 116 S. Ct. 1037 (1996); see Neufeld v. Searle Lab., 884 F.2d 335, 341 (8th Cir. 1989)

---

[2]In its brief on appeal, ESC also suggested for the first time that the district court should not have reached the question of front pay because "[f]ront pay is awarded only as an alternative to reinstatement," and reinstatement was available here. It argues that reinstatement is appropriate unless hostility between the parties makes it untenable and that there was no evidence of hostility by the company towards Curtis. This argument was not made to the district court and need not be considered for the first time on appeal, e.g., Anderson v. Unisys Corp., 47 F.3d 302, 307 n.14 (8th Cir.), cert. denied, 116 S. Ct. 229 (1995), but in any event there was evidence of hostility between Crosby and Curtis over the termination. See Williams v. Valentec Kisco, Inc., 964 F.2d 723, 729-30 (8th Cir. 1992) (request for reinstatement not required to obtain front pay; front pay may be appropriate where there is hostility between the parties).

(former employer must present evidence to rebut presumption that employee would work to normal retirement age); MacDissi v. Valmont Indus., Inc., 856 F.2d 1054, 1060 (8th Cir. 1988) (same). Determining front pay necessarily involves uncertainty, and the district court has discretion in determining an appropriate award; we review its decision for abuse of discretion. See Newhouse v. McCormick & Co., 110 F.3d 635, 642 (8th Cir. 1997). Whether an employee would have been fired even without unlawful discrimination is a factual finding that is reviewed for clear error. See Nelson v. Boatmen's Bancshares, Inc., 26 F.3d 796, 802 (8th Cir. 1994); Neufeld, 884 F.2d at 341.

There may be a presumption that an employee will retire at a "normal" retirement age, MacDissi, 856 F.2d at 1060, but such a presumption does not control where there is evidence the employee would have worked beyond that age. See Doyne v. Union Elec. Co., 953 F.2d 447, 451 (8th Cir. 1992) (upholding factual finding that employee would retire at 70 rather than at age permitted under the retirement plan). Curtis testified at the post trial hearing that she was in good health and would have continued working at ESC until she turned 70, and she had testified at trial that she had been left with few resources when her husband died and that she continued to look for a new job after she was fired by ESC. This evidence is sufficient to support the finding that Curtis would not have retired before age 70. See Nelson, 26 F.2d at 802 (evidence of employment search and no evidence of poor health sufficient to support a finding that plaintiff would have worked to the retirement date claimed). ESC did not present any evidence that Curtis would have voluntarily left her job before age 70 had she not been terminated. On this record the district court's factual finding that she would have worked until age 70 was not clearly erroneous.

ESC argues that Curtis is not entitled to front pay because it believes the jury found that she would have been terminated in June 1994. ESC reaches this conclusion because the jury did not award the full amount Curtis requested. Curtis sought $35,700 in back pay from September 1991 to the time of trial in August 1994, but the jury only

awarded her $33,380.  At the rate of pay she claimed, this would have compensated her for lost wages to June 1994 says ESC.  It presented evidence at trial that there were fewer employees in Curtis' department in June 1994 than in September 1991, and it believes the jury must have found that Curtis would have lost her job as the department was pared back.

The jury verdict does not control the district court's decision to award front pay, and the question of front pay is for the court.  See Newhouse, 110 F.3d at 643.  The ADEA limits "jury trials to factual issues underlying claims for legal relief."  Id. (quoting Dominic v. Consolidated Edison Co., 822 F.2d 1249, 1257 (2d Cir. 1987)).  The district court may not reject jury findings "on issues properly submitted to the jury," but it has discretion to consider all the circumstances involved in determining appropriate equitable relief.  Id. at 641.  The jury was not instructed to decide whether Curtis would have been terminated in June 1994, and it returned a general verdict.  Its thought process is not known. While an award of back pay through the date of verdict establishes that an employee would not have been discharged before then if it were not for age discrimination, Neufeld, 884 F.2d 335, 341 (8th Cir. 1989), an award of back pay less than requested does not necessarily mean the jury concluded the plaintiff would have been terminated for nondiscriminatory reasons and it does not therefore preclude front pay.  Downes v. Volkswagen of Am., Inc., 41 F.3d 1132, 1143-44 (7th Cir. 1994).

The elimination of Curtis' former position does not necessarily mean that front pay could not be awarded.  The question is whether she would have remained at ESC absent the discrimination; not whether her position would have stayed the same.  See Nelson, 26 F.3d at 802 (no abuse of discretion to award front pay even though plaintiff's former position no longer exists); MacDissi, 856 F.2d at 1060.  There was evidence that the tasks Curtis had done were continued by ESC employees after she was fired and that she had performed a number of jobs within the company and could have been capable of different work when the department was reduced.   The burden

was on ESC to overcome the presumption that she would have remained with the company but for the discrimination, and the district court's finding was not clearly erroneous.

In light of the facts found by the district court, including that Curtis would not have been terminated absent the discrimination and that she would have continued to work until she turned 70, it did not abuse its discretion in awarding her front pay.

## IV.

In sum, there was sufficient evidence to support the jury verdict that ESC willfully terminated Curtis in violation of the ADEA, and the district court did not abuse its discretion in denying the motion for judgment as a matter of law or for a new trial, and in awarding front pay. Although ESC appealed from the award of attorney fees to Curtis as a prevailing party, it did not challenge the amount or show that the district court erred in the award. The judgments are therefore affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.