# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-3505
No. 97-3626

_____

Excel Corporation,

    Appellant/Cross-Appellee,

    v.

Kristine Bosley,

    Appellee/Cross-Appellant.

\* Appeal from the United States
\* District Court for the Southern
\* District of Iowa, Southern Division

_____

Submitted: November 18, 1998

Filed:      January 19, 1999

_____

Before BOWMAN, Chief Judge, LOKEN, Circuit Judge, and SIPPEL, [*] District Judge.

SIPPEL, District Judge.

Kristine Bosley was an Excel Corporation (Excel) employee from July, 1990 until Excel fired her on May 16, 1994. She filed suit in federal district court alleging that her ex-husband Rock Johnson (Johnson), also an Excel employee, had harassed her while she was at work, that the harassment created a hostile work environment, and that Excel discharged her in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1) and the Iowa Civil Rights Act, Iowa Code Chapter 216 (ICRA). Bosley's claims were tried to a jury.

---

  * The HONORABLE RODNEY W. SIPPEL, United States District Judge
for the Eastern District of Missouri, sitting by designation.

The jury returned a verdict for Bosley on her claim for hostile work environment sexual harassment and awarded Bosley back pay. The jury advised against an award of front pay. The jury returned a verdict in favor of Excel on Bosley's claim for disparate treatment sexual harassment. Following the trial, the district court[1] denied Bosley's request for front pay. On appeal, we affirm.

## I.

The facts of this case, as they were presented to the jury, are discussed at length in the district court's Ruling on Post-Trial Motions, and on Application for Attorney's Fees and Expenses, see Bosley v. Excel Corporation, Civil No. 4-96-CV-20267 (S.D. Iowa Aug. 22, 1997), and we recount only those facts relevant to the determination of this case.

Bosley began working at Excel, a meat packing plant, in July 1990. Bosley was married to Johnson at that time. Johnson was also employed at Excel. Bosley separated from Johnson in 1993. Both continued to work at Excel. At trial, Bosley introduced testimony and other evidence that Johnson subjected her to sexual harassment during confrontations at work. There was also evidence that Bosley reported this harassment to Excel's management, but that management personnel did little to investigate or end the harassment.

Bosley was a line worker on the kill floor at Excel. Her position was such that she was not allowed to leave her work station, even to use the restroom, without permission from a supervisor. Johnson was a "floater" at the plant. He worked at different workstations in the plant for absent employees. He circulated regularly on the kill floor where Bosley worked.

---

[1]The Honorable Celeste F. Bremer, Chief Magistrate Judge, United States District Court for the Southern District of Iowa, Southern Division.

The record is replete with evidence of the harassment suffered by Bosley. At various times at the workplace, in the presence of other co-workers, Johnson called Bosley "bitch", "slut" or "whore". Johnson also threatened to kill Bosley's friend, now husband, Jeff Bosley. Bosley repeatedly reported the unwelcome harassment to the management at Excel. She also reported fear of Johnson's temper.

Excel's first action was to tell both Bosley and Johnson to keep their disputes at home. Later, following screaming matches on the kill floor, Bosley and Johnson were separated but neither was sanctioned. Johnson continued to harass Bosley even throwing meat and animal organs at her. This was a violation of work rules.

Beginning on May 4, 1994, Bosley took personal time off from work due to the stress of the harassment and other personal problems. She returned to work on May 9, 1994 to find Johnson once again, near her work station on the kill floor. Johnson continued his harassment calling her names such as "fucking bitch." Bosley asked the floor supervisor to relieve her temporarily from her work station. The supervisor refused, despite knowledge of the harassment and Johnson's proximity to Bosley. About fifteen minutes later, Bosley again requested permission to leave her work station. The supervisor denied her request again. Johnson continued to harass Bosley. In frustration, Bosley pushed Johnson once in the chest and told him to get out of the area and go back to his assignment. At that point, the supervisor intervened and escorted Johnson from the area.

After Bosley pushed Johnson, she was sent to a supervisor's office. Physical contact between employees is a work rule violation. Bosley was placed under "indefinite suspension." Bosley was upset. As she was leaving the work floor, Bosley saw Johnson in another room. Bosley believed that Johnson was not being sanctioned as strongly as she was, if at all. Bosley pushed past a supervisor to enter the room to talk to Johnson. This incident was reported as Bosley having struck a supervisor.

The events of May 9, 1994 formed the basis for the decision to terminate Bosley on May 16, 1994. Excel did not sanction Johnson for any of the events of May 9, 1994.

Bosley's claims that Excel fired her in violation of Title VII were tried to a jury. Both Bosley's claim of hostile work environment sexual harassment and disparate treatment based on sex were submitted. The jury returned a verdict for Bosley on her claim of hostile work environment sexual harassment and granted her back pay damages. The jury recommended against a front pay award. The jury found for Excel on Bosley's claim of disparate treatment. In its Ruling on Post-Trial Motions, the district court denied Bosley's request for front pay damages.

## II.

On appeal Excel argues that the jury erred in awarding back pay to Bosley. Excel further argues that the district erroneously held that evidence of sexual relations between Johnson and Bosley was inadmissible. Bosley cross-appeals claiming that the district court's denial of front pay damages was in error.

A.  Back Pay Issue

On appeal Excel argues that the facts in the record do not support the jury's award of back pay to Bosley. Excel argues that because it had a legitimate reason for firing Bosley, the evidence did not support a finding that sexual harassment caused Bosley's termination. Excel argues that without such a finding, back pay could not be awarded.

Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(m), an employee is entitled to relief if he or she proves that impermissible discrimination was a "motivating factor" in the employment decision, "even though other factors also motivated"

4

the employer's decision. <u>Pedigo v. P.A.M. Transp., Inc.</u>, 60 F.3d 1300, 1301 (8th Cir. 1995). The relief may include payments of front and back pay. <u>Doane v. City of Omaha</u>, 115 F.3d 624, 629 (8th Cir. 1997).

It is not necessary that the actual termination decision be motivated by discriminatory animus. <u>Keintzy v. McDonnell Douglas</u>, 990 F.2d 1051, 1060 (8th Cir. 1993). If the decision making process is tainted by discrimination, the claimant is entitled to relief. <u>Id</u>. When an employee is fired because he acted to defend himself against harassment, which supervisors failed to take reasonable measures to prevent or correct, the termination process cannot be said to be free from discrimination. <u>DeGrace v. Rumbsfeld</u>, 614 F.2d 796, 804 (1st Cir. 1980); <u>see</u> <u>also</u> <u>Keintzy v. McDonnell Douglas</u>, 990 F.2d at 1060. This is so even if the ultimate decision maker was moved purely by a legitimate concern about personnel matters. <u>Id</u>.

The issue on appeal is whether the record contains sufficient evidence for a rational fact finder to conclude that, absent the hostile work environment, Bosley would not have been fired. On appeal, discriminatory intent and discrimination are issues that may be determined from all of the facts in the case. <u>Kientzy v. McDonnell Douglas Corp.</u>, 990 F.2d at 1060. Further, we consider the evidence in the light most favorable to Bosley as the prevailing party. <u>Finley v. Empiregas, Inc. of Potosi</u>, 975 F.2d 467, 474 (8th Cir. 1992).

In applying this standard of review, we hold that there was sufficient evidence to support the award of back pay. The jury found that Bosley had been subjected to a hostile work environment at Excel. Excel does not appeal this finding. The following evidence was admitted relevant to the causation of Bosley's termination. Bosley and other co-workers complained repeatedly of the harassment Bosley was suffering. Excel chose not to act to stop the harassment because Bosley and Johnson had been married. On the day of the firing,

Bosley asked twice to be relieved of her position in an effort to get away from the harassment. Twice the supervisor refused the request. Finally, Bosley testified that she shoved Johnson out of the way. As a result of this action Bosley was fired.

The evidence was sufficient for a reasonable fact-finder to find that the termination process was tainted by sex discrimination even if the actual decision to terminate was not. This is the same conclusion expressly reached by the district court in its analysis of the front pay issue discussed below. We confirm the district court's analysis. The award of back pay was proper. Accordingly, we affirm the district court's award of back pay.

B. Front Pay Issue

A district court's decision regarding the award of front pay is reviewed for abuse of discretion. Curtis v. Electronics & Space Corp., 113 F.3d 1498, 1504 (8th Cir. 1997). The district court may not reject findings made by the jury, but it does have the discretion to consider all the circumstances involved in determining appropriate equitable relief. Id.

The issue of front pay is not an issue for the jury to decide, rather it is a form of equitable relief which must be determined by the district court after considering all aspects of the case. Newhouse v. McCormick & Co., 110 F3d 635, 641 (8th Cir. 1997). Front pay may be granted in lieu of reinstatement in situations where reinstatement would be impracticable or impossible. Id.

A Title VII claimant seeking either back pay or front pay damages has a duty to mitigate those damages by exercising reasonable diligence to locate other suitable employment and maintain a suitable job once it is located. Equal Employment Opportunity Commission v. Delight Wholesale Co., 973 F.2d 664, 670 (8th Cir. 1992). The burden of

6

proving that the employee did not make reasonable efforts is on the defendant. <u>Di Salvo v. Chamber of Commerce</u>, 568 F.2d 593, 598 (8th Cir.1978).

The record shows that the trial court heard evidence of Bosley's employment after she was terminated by Excel. This evidence showed that Bosley had taken part-time employment as a gas station clerk. Bosley then worked for a telemarketing company that paid her $2.90 less per hour than her job at Excel. There was no evidence of a further job search by Bosley. The jury found that Bosley was entitled to back pay. The district court, however, in making its front pay determination, noted that it had been three years since Excel had terminated Bosley. The district court found that the evidence did not show that Bosley had mitigated her damages for purposes of the front pay decision. The district court did not award front pay.

Bosley first argues that the district court incorrectly placed the burden of showing mitigation on her. However, the district court, in its discussion of the front pay issue, did not hold that the burden was on Bosley to show she had mitigated her damages. Rather, the district court held that the evidence in the record indicated a failure to mitigate for purposes of front pay. The district court explained that if Bosley had offered evidence of her job search, it might have shown that she had mitigated her damages. But, that evidence was not in the record. The evidence actually in the record before the court could not support a finding of mitigation. The district court did not abuse it discretion in making this determination.

Bosley next argues that the denial of front pay is inconsistent with an award of back pay by the jury. As noted, while the district court is not free to reject the jury's findings, the determination of front pay should be made after considering all of the circumstances regarding the claimant's employment situation that are relevant to the issue of front pay. The circumstances informing the back pay issue are not necessarily the same circumstances that

inform the front pay issue. The number of suitable jobs which a plaintiff could be expected to locate would likely increase as the temporal length of the job search increases. The district court specifically pointed to the amount of time that had elapsed since Bosley's termination in its discussion of the front pay issue. The jury's conclusion that during the period of the back pay award, Bosley had mitigated her damages is not inconsistent with the district court's determination that at the time of the front pay determination, sufficient time had passed, such that Bosley's failure to find comparable employment was due to a failure to mitigate.

The district court's denial of front pay damages was not an abuse of discretion. Accordingly, we affirm the district court's action.

C. Evidence of Sexual Activity

Excel argues that the district court erroneously ruled that evidence of alleged sexual relations between Bosley and her ex-husband outside the work place was inadmissible.

This court reviews a district court's ruling on admissibility of evidence for abuse of discretion. General Electric Co. v. Joiner, 118 S.Ct. 512, 517 (1997). It is very much a matter of discretion with the court whether to receive or exclude evidence and the appellate court will not reverse in such a case, unless the ruling is manifestly erroneous. Id. This same standard applies to proffered expert testimony. Id.

At trial Excel sought, pursuant to Federal Rule of Evidence 412, to admit evidence of sexual relations between Bosley and her ex-husband. These sexual relations were alleged to have taken place outside of the work place during the same time period as the complained of sexual harassment. Excel made an offer of proof of this evidence. During the offer of

proof, Johnson testified that he and Bosley had sexual relations on several occasions during the time of the alleged harassment.

Excel also sought to offer the testimony of Dr. Patrick Barrett, a clinical psychologist who Johnson saw twice during the time of the alleged sexual encounters. Dr. Barrett testified that he met once with Johnson alone and the second time with Johnson and Bosley. Bosley was in attendance at Dr. Barrett's request. Barrett testified that during the visit with Johnson alone, Johnson told him Bosley was giving him ambiguous signals and that Bosley occasionally slept with him. Dr. Barrett testified that Bosley may have acknowledged sending Johnson mixed signals. Dr. Barrett could not recall whether Bosley acknowledged sleeping with Johnson.

The district court ruled that the testimony of Johnson and Dr. Barrett was inadmissible under Federal Rule of Evidence 412.

Rule 412 allows admission of evidence of an alleged victim's past sexual behavior or alleged sexual predisposition in sex offense cases. Specifically Rule 412(b)(2) allows for the admission of such evidence in a civil case if it is otherwise admissible under the Rules of Evidence and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party. We note that the applicability of Rule 412 to evidence proferred in a lawsuit brought pursuant to Title VII has not been decided by this Court. However, it is not necessary for us to make that determination here. Rule 412 was the only basis for admissibility asserted by Excel. Admissibility of the evidence under any other rule is not before the Court. Assuming, without deciding, that Rule 412 is applicable to the evidence proffered in this case, we cannot find that the district court abused its discretion in refusing to admit into the record, evidence of alleged sexual relations between Bosley and Johnson outside the workplace.

The evidence in the record does not support a finding that the district court manifestly erred in refusing to admit the offered testimony. The alleged sexual activity took place outside the workplace. There was no allegation that Excel was aware of it or that it informed Excel's actions regarding the sexual harassment about which Bosley complained. This was the issue before the jury not Bosley's actions outside the workplace. Further the danger of harm and unfair prejudice to Bosley was great. The district court did not abuse its discretion in refusing to admit the testimony of Johnson and Dr. Barrett. Accordingly, we affirm the actions of the district court.

## III.

For the reasons above, we affirm the judgment and award of back pay.

Loken, Circuit Judge, concurring.

I agree with the court's decision to affirm, and I concur in its opinion. But for me, there is an additional, troubling aspect to this case that warrants brief mention -- the parties' assumption, reflected in the district court's instructions to the jury, that the harassment of Bosley by her spouse was necessarily *sexual* harassment, so that the resulting hostile work environment, when unremedied by Bosley's employer, was unlawful under Title VII. Marriage in today's legal environment is invariably between persons of the opposite sex. When a marital spat spills over to the work place, it may produce misconduct that is not motivated by unlawful sex discrimination, even though that same misconduct between unrelated co-workers of the opposite sex would quite properly be the basis for inferring such discrimination. As the court observed in <u>Galloway v. General Motors Corp.</u>, 78 F.3d 1164, 1168 (7th Cir. 1996):

> The repetition of the term ["sick bitch"] together with the other verbal conduct
> that is alleged reflected and exacerbated a personal animosity arising out of the

> failed relationship rather than anything to do with a belief by [the male harasser], of which there is no evidence, that women do not belong in the work force or are not entitled to equal treatment with male employees.

In this case, the district court instructed the jury it could infer sexual harassment from Rock's use of "sexually derogatory language" and "discriminatory intimidation, ridicule, and insult," without a cautioning instruction of the kind upheld in <u>Rothenbusch v. Ford Motor Co.</u>, 1995 WL 431012 (6th Cir. 1995) (unpublished per curiam): "Personal animosity is not the equivalent of sexual harassment and is not proscribed by law." Excel Corporation did not request such a cautioning instruction, did not object to the instruction given, and does not raise an instruction issue on appeal. But if requested in a case of this type, I believe that this kind of cautioning instruction must be given to ensure that Title VII is not unwittingly expanded to impose liability on employers for condoning or not remedying offensive co-worker conduct that does not amount to discrimination "because of . . . sex." 42 U.S.C. § 2000e-2(a).

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

11