# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-3724
_____

Qwest Communications Corporation, a Delaware corporation, now known as CenturyLink Communications, LLC, doing business as CenturyLink QCC

*Third Party Plaintiff - Appellant*

v.

Free Conferencing Corporation, a Nevada corporation

*Third Party Defendant - Appellee*
_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls
_____

Submitted: October 18, 2018
Filed: April 12, 2019
_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Following our prior remand, Qwest Communications Corp. v. Free Conferencing Corp., 837 F.3d 889 (8th Cir. 2016), the district court[1] reconsidered

_____

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

Qwest Communications' (Qwest) unjust-enrichment claim against Free Conferencing (FC), which it had previously denied. The district court again denied Qwest's claim, albeit for different reasons. The district court found that, although Qwest had shown it conferred a benefit upon FC and FC accepted that benefit, it would not be inequitable for FC to retain that benefit without paying Qwest. The district court explained that FC earned that benefit because it provided conference-calling services, 24-hour customer support, and access to a website in exchange for two cents per minute for calls placed to FC's conferencing bridges at Sancom. Moreover, Qwest paid its own conference-calling vendor, Genesys, between two and four-and-a-half cents per minute. Qwest again appeals. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

> In reviewing a judgment after a bench trial, we review the district court's factual findings and credibility determinations for clear error, and its legal conclusions de novo. We will overturn a finding of fact only if it is not supported by substantial evidence, it is based on an erroneous view of the law, or we are left with a definite and firm conviction that an error has been made.

Qwest, 837 F.3d at 895 (internal citations and quotation marks omitted).

Qwest argues the district court erred when it found FC was not unjustly enriched. "Unjust enrichment is an equitable remedy," id. at 899 (citing Dowling Family P'ship v. Midland Farms, 2015 S.D. 50, ¶ 10, 865 N.W.2d 854, 860), "and we review a district court's decision to deny an equitable remedy for abuse of discretion." Id. (citing Olivares v. Brentwood Indus., 822 F.3d 426, 429 (8th Cir.

-2-

2016)).[2]  "A district court abuses its discretion if it fails to consider a relevant factor that should have been given significant weight, if it considers an improper or irrelevant factor, or if it 'commits a clear error of judgment in the course of weighing proper factors.'"  Id. (quoting Aaron v. Target Corp., 357 F.3d 768, 774 (8th Cir. 2004)); cf. Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., 572 U.S. 559, 563 n.2 (2014) ("The abuse-of-discretion standard does not preclude an appellate court's correction of a district court's legal or factual error: 'A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990))).

"To establish a claim for unjust enrichment, the plaintiff must prove (1) it conferred a benefit upon another; (2) the other accepted or acquiesced in that benefit; and (3) it would be inequitable to allow the other to retain that benefit without paying."  Qwest, 837 F.3d at 899 (citing Dowling, 2015 S.D. 50, ¶ 19, 865 N.W.2d at 862).  "[T]he fact that a benefit is retained, enjoyed, and profitably exploited by the recipient, all without compensation, does not necessarily mean that the recipient has been unjustly enriched."  Id. (alteration in original) (internal quotation marks omitted).  "Rather, the beneficiary must obtain the benefit in a manner that the law regards as unjustified."  Id. (internal quotation marks omitted).  "[T]he relevant inquiry is whether the circumstances are such that equitably the beneficiary should restore to the benefactor the benefit or its value."  Id. (alteration in original) (quoting Hofeldt v. Mehling, 2003 S.D. 25, ¶ 18, 658 N.W.2d 783, 788); see also Mack v.

---

[2]Our case law and South Dakota case law have used "unjust enrichment" and "restitution" synonymously.  This use "has become prevalent."  James J. Edelman, Unjust Enrichment, Restitution, and Wrongs, 79 Tex. L. Rev. 1869, 1869 (2001).  In this case, however, we will use "unjust enrichment" to refer to Qwest's "claim" and "restitution" as the "equitable remedy" available should liability be established.  See Johnson v. Larson, 2010 S.D. 20, ¶¶ 8, 11, 779 N.W.2d 412, 416 (referring to unjust enrichment as a "claim" and restitution as an "equitable remedy").

Mack, 2000 S.D. 92, ¶ 27, 613 N.W.2d 64, 69 ("When unjust enrichment is found, the law implies a contract, which requires the defendant to compensate the plaintiff for the value of the benefit conferred.").

## II.

Based on the circumstances, we find no abuse of discretion by the district court in its conclusion that it would not be inequitable for FC to retain the benefit conferred by Qwest. Ultimately, our decision is driven by the relevant standard of review. "The abuse-of-discretion standard means 'the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 895 (8th Cir. 2013) (quoting Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir. 1984)). "The very concept of discretion presupposes a zone of choice within which the trial courts may go either way." Id. at 895-96 (quoting Kern, 738 F.2d at 971). We are also "mindful that the district courts are closer to the facts and the parties . . . ." Kern, 738 F.2d at 970.

The district court explained that FC earned the benefit conferred by Qwest because it provided conference-calling services, 24-hour customer support, and access to a website in exchange for two cents per minute for calls placed to FC's conferencing bridges at Sancom. Moreover, Qwest paid its own conference-calling vendor, Genesys, between two and four-and-a-half cents per minute. Upon review of the record, we have not identified any relevant factors the district court failed to consider, nor any improper or irrelevant factors that it should not have considered, nor any clear error of judgment on the part of the district court. Nor is the district court's decision legally erroneous, based on our reading of South Dakota law on unjust enrichment.

While the dissent implies FC did not legally acquire the benefit it received from Qwest because it did so "through billing practices that 'were never legal,'" Qwest, 837 F.3d at 899, and, therefore, it would be inequitable for FC to retain the benefit conferred by Qwest, the dissent also concedes that we have previously concluded that "FC was not itself acting illegally[.]" Id. at 900; cf. Commercial Trust & Sav. Bank v. Christensen, 535 N.W.2d 853, 858 (S.D. 1995) ("Unjust enrichment claims do not arise simply because the landlord benefits from the efforts of tenants; 'unjust' enrichment implies illegal or inequitable behavior *by the landlord* in obtaining the benefits conferred by the tenant." (emphasis added)).  Moreover, FC was not "a party to the FCC proceedings" nor did "the FCC exercise[] . . . jurisdiction over FC [or] criticize the motives of FC in entering into the contract with Sancom . . . ." Qwest, 837 F.3d at 901 (Shepherd, J., concurring in part & dissenting in part).

The dissent also asserts the district court failed to consider the access stimulation scheme between FC and Sancom, but the district court, who has presided over this case for over a decade, acknowledged this scheme on remand and in prior proceedings.  See Qwest Commc'ns Corp. v. Free Conferencing Corp., No. 4:07-CV-04147-KES, 2017 WL 5198190, at *2 (D.S.D. Nov. 9, 2017) ("Sancom and FC split[] the access charges paid by [Qwest] on calls destined for FC's conference bridges."); see also Qwest Commc'ns Corp. v. Free Conferencing Corp., No. CIV. 07-4147-KES, 2015 WL 3603866, at *1 (D.S.D. June 5, 2015) ("During the time period involved in the dispute between Sancom and Qwest, Sancom and FC engaged in access stimulation."); Qwest Commc'ns Corp. v. Free Conferencing Corp., No. CIV. 07-4147-KES, 2014 WL 5782543, at *17 (D.S.D. Nov. 6, 2014), aff'd in part, rev'd in part, remanded, 837 F.3d 889 (8th Cir. 2016) ("On referral, the FCC found that Sancom and FC engaged in an access stimulation scheme.  The evidence at trial showed that FC knew it was taking advantage of Sancom's tariffs by engaging in access stimulation with Sancom.").

Finally, the dissent asserts the district court "gave dispositive weight to an improper factor devised from inapposite South Dakota case law," citing Parker v. Western Dakota Insurors, Inc., 2000 S.D. 14, 605 N.W.2d 181. However, the district court was not influenced by Parker but rather by the fact that, based on the circumstances, it would not be inequitable for FC to retain the benefit without paying Qwest. We left that merits determination to the district court's discretion "based on the full record." Qwest, 837 F.3d at 900 & n.5 ("[E]ven though FC was not itself acting illegally, its conduct *might* be characterized as inequitable . . . ." (emphasis added)).

Accordingly, the district court's denial of Qwest's unjust-enrichment claim was not an abuse of discretion.

III.

The judgment is affirmed.

KELLY, Circuit Judge, dissenting.

The abuse-of-discretion standard undoubtedly is deferential. But as the court notes, it "does not preclude an appellate court's correction of a district court's legal or factual error." Highmark, 572 U.S. at 563 n.2. "A district court abuses its discretion if it fails to consider a relevant factor that should have been given significant weight" or "if it considers an improper or irrelevant factor." Qwest, 837 F.3d at 899. In my view, the district court both failed to consider a critical factor that should have been given significant weight, and, influenced by inapposite South Dakota case law, gave dispositive weight to an improper factor. Accordingly, I respectfully dissent.

It is important to note that on remand, the district court was not deciding the issue of unjust enrichment on a blank slate. One of our conclusions in Qwest was that FC's traffic-pumping scheme, which allowed FC to receive from Qwest the "benefit" at issue here, was illegal and had always been so. Id. at 899–900 (explaining that the billing practices under the Sancom-FC contract "were *never* legal" (emphasis added)). And it was not a defense to Qwest's unjust enrichment claim, we explained, that FC did not know this scheme was illegal at the time it implemented it with Sancom. Id. at 900. "[E]ven though FC was not itself acting illegally, its conduct might [nevertheless] be characterized as inequitable because it retained a benefit based on Sancom's tariff violation, which it partly caused." Id. Our view on this issue was one reason that compelled us to remand.

But on remand, no consideration was given to our discussion of the *illegality* of FC's traffic-pumping scheme. The district court did not consider that FC earned a benefit—one that Qwest did not know of, much less consent to—by inducing Sancom to engage in billing practices that were "never legal." Failure to consider this factor not only runs afoul of Qwest, but it also runs afoul of South Dakota law and therefore constitutes an abuse of discretion. See Cooter, 496 U.S. at 405 ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law . . . ."). Under South Dakota law, "[a]n enrichment is unjust if it 'lacks an adequate legal basis; [i.e.,] it results from a transaction that . . . is *nonconsensual*.'" Dowling, 865 N.W.2d at 864 (second alteration in original) (quoting Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. b (2011)); see also Commercial Tr., 535 N.W.2d at 858 ("'[U]njust' enrichment implies illegal or inequitable behavior by the [defendant] in obtaining the benefits conferred by the [plaintiff]."). As we intimated in Qwest, and as Dowling makes clear, the district court should have considered—in a claim seeking equitable relief—that FC only obtained the benefits it received from Qwest through an illegal traffic-pumping scheme, a scheme that

Qwest did not consent to, bargain for, or request.[3] In my view, retaining the benefits received from such a scheme amounts to unjust enrichment.

In addition, the district court gave dispositive weight to an improper factor devised from inapposite South Dakota case law. The district court concluded that FC "earned" the benefit it received from Qwest because "FC provided conference calling services, 24-hour customer support, and access to a website in exchange for 2 cents per minute for calls placed to FC's conferencing bridges at Sancom." But critically, FC provided those services for the sole purpose of driving increased traffic to its conferencing bridges. Every minute of additional traffic simply resulted in more money for FC at Qwest's expense. It is difficult to see how FC equitably "earned" the benefit it received from Qwest by devising and implementing an illegal scheme that served no purpose except to "tak[e] advantage of legal uncertainty" for FC's benefit. Qwest, 837 F.3d at 899.

The district court's reliance on this factor seems to stem from Parker v. Western Dakota Insurors, Inc., the only case it discussed in its substantive analysis. The district court read this case as standing for the proposition that an unjust enrichment claim cannot lie where "the defendant paid for the benefit" it received. But in my view, Parker has no application here for at least two reasons. First, the plaintiff in that case did not confer the benefit on the defendant, and thus the plaintiff

_____

[3]The court emphasizes the statement in Qwest that "FC was not itself acting illegally," and suggests that such a recognition absolves FC from liability in this unjust enrichment claim. Supra, at 5. But as we also recognized in Qwest, that a party might be acting lawfully is not dispositive on an equitable remedy. See Qwest, 837 F.3d at 899–900 (explaining that whether FC's intent was benign would not be dispositive "because unjust enrichment is appropriate where the beneficiary gains a benefit inequitably, even if the beneficiary does not intend to deprive the benefactor of the benefit"); see also Johnson, 779 N.W.2d at 417–18 (concluding that a party was liable for unjust enrichment under South Dakota law even where it was not a "wrongdoer[]" and "had no intent to deprive" the plaintiff of his benefit).

failed even to establish the critical first element of an unjust enrichment claim. Parker, 605 N.W.2d at 187; see Qwest, 837 F.3d at 899 (explaining that the first element in an unjust enrichment claim is proof that the "[plaintiff] conferred a benefit upon another"). Here, in contrast, it is undisputed that Qwest conferred the benefit on FC. Qwest, 837 F.3d at 899–900. But second, and more fundamentally, Parker found that there was no unjust enrichment because the defendant in that case had paid for the benefit in question through a legitimate, negotiated transaction with the party who conferred the benefit (First American). See Parker, 605 N.W.2d at 187 ("First American conferred the benefit, which it had a right to do . . . ."). "[The defendant] *legally* acquired the [benefits] and paid valuable consideration [to First American] for them." Id. at 186 (emphasis added). In contrast, as described above, under Qwest, FC acquired the benefit it received from Qwest through billing practices that "were never legal." Qwest, 837 F.3d at 899. Parker, therefore, has limited application here.

This case presents an unusual set of circumstances, particularly in light of the participation of a third party (Sancom), making analysis of Qwest's unjust enrichment claim rather challenging. But because I believe the district court abused its discretion in how it analyzed that claim, I respectfully dissent.

_____